THE STATE ex rel. J. F. KERN, Treasurer of Drainage District Number One, Appellant, v. JOHN STONE, Treasurer of Bates County.

Division One, December 20, 1916.

1. **MANDAMUS: Clear Right.** In order that a writ of mandamus may be available it is essential that relator have a clear right to the thing demanded, and that it is the imperative duty of respondent to perform the act prayed for.

State ex rel. v. Stone.

2. **PARTY TO SUIT:** Interest in Result: Binding Effect of Judgment. Whenever a party is interested in the subject-matter of pending litigation, and is placed in the control and management of the defense therein, he is just as much bound by the judgment in the cause as the real defendant in whose name the defense is made.

3. ——: ——: ——: **Drainage District and County: Mandamus Pendente Lite.** In a suit by the contractor for the construction of a drainage district organized under the "county court law," brought· in the Federal court against both the county and drainage district, for the balance claimed to be due him for work done, from which the drainage district was discharged upon its own demurrer, and thereafter was reorganized under the Act of 1913 as a "circuit court" district and took charge of the defense of the suit still pending against the county, against which a judgment was rendered, it is just as much bound by that judgment as is the county. And if the suit is still pending on appeal in the Federal court, the drainage district cannot maintain mandamus against the county treasurer to compel him to turn over to it to be used for other purposes, money raised by benefit assessments which the judgment makes available for the payment of the judgment against the county, in case it is affirmed on appeal.

4. **JURISDICTION OF FEDERAL COURTS:** Recognition by State Courts. It is the duty of State courts to recognize and acknowledge the jurisdiction of Federal courts in all matters in which by the Constitution of the United States and laws of Congress in harmony therewith they have been vested with jurisdiction, and not to attempt to anticipate or disregard or override a judgment of a Federal court in a pending case of which it has jurisdiction.

Appeal from Bates Circuit Court.—*Hon. Charles A. Calvird,* Judge.

Affirmed.

*Thomas J. Smith* for appellant.

(1) The plea of the defendant in his return setting up the alleged refusal of the drainage district to become a party defendant to the action brought in the United States District Court by Wills & Sons against Bates County is inconsistent with the further averments in the return that that court held exclusive jurisdiction of all matters involved in the present proceeding, and that that court had held the drainage district was not a proper party defendant. The former plea referred to,

should, therefore, be disregarded. Cable v. McDaniel, 33 Mo. 363; Adams v. Trigg, 37 Mo. 141; Darrett v. Donnelly, 38 Mo. 492; State ex rel. v. Delmar Jockey Club, 200 Mo. 65; Dickey v. Potter, 203 Mo. 20; Price v. Mining Co., 83 Mo. App. 474; Bank v. Stone, 93 Mo. App. 294. (2) Wills & Sons, as plaintiff in that action, had a right to proceed against any one party which they conceived to be liable, and in an action at law no outside party could force itself in as a party defendant. R. S. 1909, sec. 1734; Badgley v. St. Louis, 149 Mo. 122; Noble v. Kansas City, 95 Mo. App. 167; Simpson v. Schulte, 21 Mo. App. 639. (3) The admissions by defendant in the return to the writ that the funds in dispute are the proceeds of the second bond issue are inconsistent with the claim made in the return that Wills & Sons may set up some claim to the fund in dispute, since it is specifically admitted in the return that the work done by these contractors was to be paid out of the proceeds of the first bond sale. Being inconsistent, as stated, this plea should be disregarded. See authorities under proposition one. (4) Wills & Sons' claim being payable out of a specific fund only, and there being no provision in the statute for the replenishing of this fund when the same was properly exhausted, they were without remedy. R. S. 1909, secs. 5596, 5598, 5599, 5603; Pettis County v. Kingsbury, 17 Mo. 479; Kingsbury v. Pettis County, 48 Mo. 207; Campbell v. Polk County, 49 Mo. 214; State ex rel. v. Macon County, 68 Mo. 37; Cook v. Putnam County, 70 Mo. 592; Cook v. Putnam County, 81 Mo. 591; Moody v. Cass County, 74 Mo. 307; Moody v. Cass County, 85 Mo. 477; Wilson v. Knox County, 132 Mo. 401; McGowen v. Ford County, 107 Cal. 177; Peake v. New Orleans, 139 U. S. 342. (5) Even if the fund in question might eventually be held liable for any claim of Wills & Sons, they would not be proper parties defendant in this proceeding. State ex rel. v. Burkhardt, 59 Mo. 75; State ex rel. v. Fraker, 166 Mo. 142; State ex rel. v. Coleman, 183 Mo. App. 365. (6) Even if Wills & Sons might be held finally to have a claim against the fund in question, the relator was en-

titled to handle and administer this fund. Laws 1913, sec. 56, p. 264. (7) The plea of part payment and an alleged agreement by the board of supervisors, even if it had been proven, would constitute no defense to the action, because such an agreement was without consideration, the relator being entitled to the whole fund. Helling v. United Order of Honor, 29 Mo. App. 309; Griffith v. Creight, 61 Mo. App. 1; Winters v. Railroad, 73 Mo. App. 173; Brewery Co. v. Schowenlau, 32 Mo. App. 357; Reinhold v. Kerrigan, 85 Mo. App. 256; Banking Co. v. Baker, 99 Mo. App. 660; Whitmore v. Cranch, 150 Mo. 671.

*DeWitt C. Chastain* for respondent.

(1) The county treasurer has the right to this fund until the Wills case is settled under the agreement. The consideration is sufficient. Rinehart v. Bills, 82 Mo. 534; Nelson v. Diffenderffer, 178 Mo. App. 48. The evidence justifies the conclusion that at the time the district was reorganized there was an agreement that $40,000 of the district funds should be turned over and the $29,000 held by the county as indemnity. At this time there was a suit pending by Wills & Sons for $50,000 against the county. The court has held that the county was the proper party and that the district was not. Wills v. Bates Co., 190 Fed. 522. (2) The writ of mandamus is not issued in doubtful case, but must be based upon a clear right. State ex rel. v. Reynolds, 243 Mo. 715; State ex rel. v. Thomas, 245 Mo. 65; State ex rel. v. Gas Co., 254 Mo. 515. In this case there are several things that stand in the way of a clear right in relator: First: A judgment stands against the county and it is ordered satisfied out of any funds belonging to the district. It is contended that this fund is not applicable to that judgment. No authority to that effect is cited. There is but one district and Wills & Sons' judgment is for doing the original work. The question of whether this money is available cannot be decided so as to bind Wills & Sons in an action to

which they are not parties. Second: Relator contends that the original fund being exhausted, and being no provision for replenishing the fund, that Wills & Sons are without a remedy and not entitled to a judgment—but such a contention was ruled adversely to them by the Federal court. Third: It is claimed that even though Wills & Sons were entitled to the fund that the relator was entitled to administer it but note relator testifies that if he gets the fund he will spend it on the ditch. This would be an improper use until the rights of Wills & Sons are determined. Mandamus is a discretionary writ and this is not a proper case for it. Fourth: The judgment against Bates County being in the Federal court that court would have jurisdiction to determine what was applicable to the payment thereof. Bank v. Hughes, 152 Fed. 414; Preston v. Calloway, 183 Fed. 19; Babcock v. Millard, 2 Fed. Cas. No. 699; 4 Fed. Stat. 298. Fifth: If this writ is ordered, Wills & Sons not being parties will not be bound and if subsequently the fund in question is held to be subject to their claim, the respondent will be liable on his bond. To pay this money out after judgment rendered even upon a writ from this court would be at the peril of the respondent.

RAILEY, C.—This is a mandamus proceeding, brought by relator as treasurer of Drainage District Number One, in Bates County, Missouri, against respondent, as the treasurer of said county, to compel the latter to turn over to relator, as treasurer aforesaid, $29,-016.16, held by him under an order of the county court of said county, together with $1700 alleged to have been received by said county as interest, on account of the proceeds of sale of drainage bonds.

**Statement.**

The record before us is very meagre and unsatisfactory, but as the proceedings in the Federal Court by Wills & Sons v. Bates County, prior to the rendition of the last judgment in said court, are reported in full, in the two cases of Wills v. Bates County. 170 Fed. 812, and Bates County v. Wills, 190 Fed. 522, we will set out some of the facts more in detail, as shown in said

reports, than they appear in the record before us, in order that we may be fully advised as to the merits of the present controversy.

Certain citizens of Bates County aforesaid, organized Drainage District Number One, under article 4, chapter 41, Revised Statutes 1909, known as the *"County Court Law."* The county court of said county, acting for the drainage district, let a contract, through Bell, the engineer, to Timothy Foohey & Sons, for the construction of a ditch in said county, divided into three sections. The contract and bond given by the contractors were subsequently approved by the county court. On the day of the execution of said contract, Foohey & Sons assigned and transferred to A. V. Wills & Sons the portion of the contract relating to section numbered 3. Wills & Sons obligated themselves to perform the contract relative to section 3, and the work which was done upon said last named section was performed by them. Separate estimates were made by the engineer of work done by Wills & Sons, as the same progressed, to August, 1908, and ninety per cent of the total amount was paid by the county court, ten per cent being reserved.

During the progress of the work and on the 6th day of August, 1908, the records of the county court show that Wills & Sons stated to said court that they found in the land required to be excavated a large amount of stone, which was not covered by the terms of their contract, and that they could not remove the same under said agreement. It was finally agreed between Wills & Sons and the county court, that the work should be continued as formerly, by Wills & Sons, without prejudice as to their right *to refuse* to move the stone; and without prejudice as to the right of the county to *contest* the claim of Wills & Sons, in respect to said matter. Thereafter, Wills & Sons removed said material from the ditch, except the stone, which *they* insisted they were *not* required to remove; the *county court* insisting that they *were* required, under the contract, to remove same.

On April 3, 1909, Wills & Sons brought suit in the Federal Court against Bates County and Drainage Dis-

trict Number One, 190 Fed. l. c. 526, to recover $58,000, which they claimed to be due them for said work. Mr. Smith, who is counsel for relator in this action, appeared in behalf of Bates County and said district, and filed separate demurrers to plaintiff's petition, in behalf of said defendants. Judge PHILIPS, in disposing of the separate demurrer of the drainage district, in 170 Fed. l. c. 813-4, said:

"Without entering into any detailed discussion, I am of opinion that the demurrer is well taken as to defendant drainage district. The whole scope and tenor of the statute under which the contract was made indicate that it was made, in effect, under orders of the county court of Bates County, in pursuance of a power conferred upon it by the Legislature. . . . I am therefore unable to see that any judgment could be rendered against the drainage district for the work done by plaintiffs. The demurrer, therefore, on behalf of the drainage district is well taken."

The county's separate demurrer to the petition was overruled. It then filed an answer, denying liability, and claimed therein that plaintiffs, under the contract, were required to remove all the material from the ditch, including stone; that they had not done so; and that the engineer had not given any estimates for unpaid work.

At the trial but little evidence was offered, for the reason that the trial court expressed the view that the agreement of August 6, 1908, constituted a new contract which entitled plaintiffs to recover the full amount of the balance due for the work which they had performed, and directed a verdict in favor of plaintiffs and against the county for that amount. Judge MUNGER, upon the county's appeal from the above judgment, held that:

"The judgment in this case awarded them the entire amount, and to the extent that it exceeded ninety per cent was clearly erroneous . . . The evidence does not show that the fund applicable for the payment was exhausted or was insufficient to pay for the completion of the work." [190 Fed. l. c. 529.]

The above judgment was reversed and a new trial ordered.

Before the second trial, Drainage District Number One had reorganized under the Act of 1913, as a circuit court district, and this was pleaded by the county as a defense in the last trial before the district court, but the court held that the *county* was still the proper party to be sued, instead of the district.

Upon the last trial, the jury assessed the damages of Wills & Sons at $42,609.08, and assessed the defendant's damages at $11,610.77, and thereupon judgment was entered in said court as follows:

"It is therefore considered, ordered and adjudged that the plaintiffs A. V. Wills, W. V. Wills and Emmett Wills have and recover of and from the defendant Bates County, Missouri, $30,998.31, so found to be due, together with their costs herein expended, and have execution therefor, the same to be paid and discharged from and out of the funds raised or to be raised by benefit assessments upon and against the lands in Drainage District Number One, Bates County, Missouri."

From this judgment an appeal was taken by defendant to the United States Circuit Court of Appeals, where the case is still pending.

It appears from the record and briefs on file that the first funds raised by the district by bond issue amounted to $356,000, and that they were issued in the construction of the drainage system.

It is averred in the petition, in respect to the money sued for, that:

"This fund was a part of a fund of $170,000 that had been raised by a second-bond issue for the doing of additional work, not yet completed, in digging ditches, building bridges, and repairing dikes and other works for the reclamation of lands in the district."

The defendant's return, in this case, among other things, alleges, that:

"It is admitted that the funds raised from the bond issue from which the construction work done by Wills & Sons was to be paid had been entirely exhausted, leav-

ing no money in that fund out of which to pay the judgment in their favor, but it is averred that the second fund was raised for the purpose of deepening original ditch and doing new work in the system, but that the work contemplated in the plan for reclamation and for the doing of which the second-bond issue was made had been completed, leaving the amount in dispute as a surplus, and that out of this surplus the drainage district was intending to do maintenance work. That Wills & Sons were claiming, that this surplus was applicable to the payment of their claim, and that pending the appeal from that judgment the money could not be safely turned over by defendant.''

Relator was sworn as a witness, and testified, that:

''The board of supervisors has had charge of the defense of the case in the United States court, since the reorganization. I remember Mr. Chastain told me if the board would put up a bond to hold the county harmless, the county court would turn the money over, but that would not get us anywhere. If we had the money, we would go ahead and finish the ditch.''

The evidence is undisputed that ever since the reorganization of Drainage District Number One and before the last trial in the United States court, the drainage district, through its board of supervisors, has had charge of the defense of the Wills case now pending in the Court of Appeals.

The trial court found the issues herein for defendant; denied the writ of mandamus and entered its judgment in behalf of respondent.

Relator appealed the case to this court.

I. In order that a writ of mandamus may be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of respondent to perform the act

Mandamus.    required. [State ex rel. v. City of Willow Springs, 183 S. W. (Mo.) l. c. 592-3; State ex inf. v. Kansas City Gas Company, 254 Mo. l. c. 532; State ex rel. v. Hudson, 226 Mo. l. c. 265; State ex rel. v. Bridge

Co., 206 Mo. l. c. 134; State ex rel. v. McIntosh, 205 Mo. l. c. 610; State ex rel. v. Lesueur, 136 Mo. l. c. 459; State ex rel. Thomas v. Williams, 99 Mo. l. c. 303; State ex rel. Snyder v. Newman, 91 Mo. l. c. 451; Ex parte Ashcraft, 186 S. W. (Mo. App.) l. c. 533; State ex rel. v. Appling, 191 Mo. App. l. c. 592-3.]

II. In the litigation heretofore mentioned, the United States District Court had jurisdiction over the subject-matter under consideration and also over the persons of Wills & Sons, as well as Bates County, Missouri. The drainage district was originally joined as a co-defendant with the county, and was re-moved from said proceedings, through its own action. The county and drainage district pos-sessed a common interest, which had for its purpose the defeat of the Wills demand. The county's interest is best represented by Judge MUNGER, in Bates County v. Wills, 190 Fed. l. c. 526-7, where it is said:

**Binding Effect of Judgment.**

"The first contention made here upon the part of the county is that it in no manner is liable upon the contract, that the contract was not one made by the county for and on its behalf, but was a contract of the drainage district, and that the drainage district alone is liable. Viewing the legislation of the State relative to these drainage districts, we think it apparent that drainage districts were merely political subdivisions of the county for the special pur-poses of drainage, and were not at the time the contract was entered into created corporations capable of suing and being sued. The whole proceeding for the establishment of drainage districts, construction of ditches, assessing property therefor, and providing the funds to pay for construction, was vested in the county court. The stat-ute expressly required that the engineer should make the contract for and on behalf of the county.

"We think it apparent that the contract in question was a special contract of the county, differing from its general contracts, in that the funds for the payment of the enterprise were to be collected from the portion of the county only that derived special benefit from the im-

provement; that the district formation was for the purpose of designating the territorial part of the county to be assessed for the payment thereof.''

It is undisputed that since the reorganization of the drainage district, the latter, through its board of supervisors, has had the *entire* control and management of the Wills case now pending in the Federal court. At the last trial, when judgment was entered against the county, the drainage district had charge of the case, and in the name of the county urged that it was a necessary and proper party to defend the case, but the Federal court overruled this contention, and decided that the county was still the proper party to defend the action. The drainage district, in the name of the county, appealed from the last judgment of the Federal court, and still has the management and control of the defense in said cause. The above judgment, among other things, recites, that it is *"to be paid and discharged from and out of the funds raised or to be raised by benefit assessments upon and against the lands in Drainage District Number One, Bates County, Missouri."*

Said district, in view of the facts aforesaid, was just as much bound by the above judgment as Bates County. Whenever a party is interested in the subject-matter of pending litigation, and is placed in the control and management of the *defense* therein, he is just as much bound by the judgment in the cause, as the real defendant, in whose name the defense is made. [Titus v. Development Co., 264 Mo. l. c. 249; Wilson v. Drainage District, 257 Mo. l. c. 283; Davidson v. Real Estate & Investment Co., 249 Mo. 474, 503; Landis v. Hamilton, 77 Mo. 554; Wood v. Ensel, 63 Mo. 193-4; Strong v. The Phoenix Ins. Co., 62 Mo. l. c. 299; Harvie v. Turner, 46 Mo. l. c. 448; State to use v. Coste, 36 Mo. 437-8; Sturdivant Bank v. Huters, 87 Mo. App. 539-40; State ex rel. Reeves v. Barker, 26 Mo. App. 487.] If the drainage district had been joined as a defendant, in the action now pending in the Federal Court of Appeals, and judgment had been rendered against it as well as the county, it would be too plain for argument that the

drainage district could not successfully maintain a mandamus proceeding in the State circuit court, against the county, or its treasurer, with the above action still pending, to compel the latter to turn over to it the funds attempted to be charged with the payment of said judgment. On the facts disclosed by the record, the drainage district is just as much bound by said judgment as if it were a party thereto, and hence is clearly not entitled to maintain this action.

III. The district court in the case of Wills ·& Sons v. Dates County, Mo., specified that its judgment for $30,998.31 should be paid "out of the funds raised or to be raised by benefit assessments upon and against the lands in Drainage District Number One, Bates County, Missouri." We are asked by relator to ignore the above judgment and litigation; and to compel Bates County, through its treasurer, to pay over to him the money in controversy, in order that it may be used for purposes other than the payment of above judgment, if affirmed.

*Mandamus Pendente Lite.*

We express no opinion as to the rulings of the Federal Court in the case now pending therein.

In State ex rel. v. Williams, 221 Mo. l. c. 254, GANTT, J., speaking for the Court in Banc, quoted with approval from the opinion of the Supreme Court of the United States, in Covell v. Heyman, 111 U. S. 176, as follows:

"These courts do not belong to the same system so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues."

After a full consideration of this subject, Judge GANTT, on page 257, said:

"Jealous as the States are, and of right ought to be, of the powers reserved to them in our dual form of government, it is still the duty of the officials of the State to recognize those powers which have been granted to the Federal Government by the States in the formation of our Constitution, and to uphold and respect them so long as the Federal authorities keep within the orbits prescribed for them by the organic law."

The principles announced by the Court in Banc in the Williams case, supra, have never been overruled or modified, and, hence, preclude the relator from maintaining this action.

IV.    On the record in this cause, the conclusion reached by the circuit court is correct and should be sustained.

The judgment below is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All the judges concur, except *Woodson, J.,* not sitting.